UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL COLEMAN SAVAGE,<br><br>                Plaintiff,<br><br>  v.<br><br>CITY OF TWIN FALLS, a political subdivision of the State of Idaho, TWIN FALLS CITY POLICE DEPARTMENT, BRIAN PIKE, CHIEF OF POLICE FOR TWIN FALLS POLICE DEPARTMENT, TWIN FALLS POLICE OFFICER TIMOTHY ARRENDONDO, TWIN FALLS POLICE OFFICER ISAIAH DAY, and JOHN and JANE DOES I – X,<br><br>                Defendants. | Case No. 1:13-CV-00179-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently pending before the Court is Defendants' Motion to Enforce Settlement Agreement ("Motion to Enforce") (Dkt. 32). In the interest of avoiding further delay and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Court will address and resolve this motion without a hearing. Therefore, having carefully reviewed the record, the Court enters the following Order.

# BACKGROUND

On April 19, 2013, Plaintiff Michael Coleman Savage ("Plaintiff") filed suit against Defendants City of Twin Falls, Twin Falls City Police Department, Brian Pike, Chief of Police for Twin Falls City Police Department, Twin Falls City Police Department Officers Timothy Arrendondo and Isaiah Day, and Jane/John Does I-X (collectively referred to hereinafter as "Defendants"). Brought pursuant to 42 U.S.C. § 1983, Plaintiff alleges Defendants acted in their official capacities to deprive him of the rights protected by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution. Specifically, Plaintiff's Complaint alleges Twin Falls City Police Officers Timothy Arrendondo ("Arrendondo") and Isaiah Day ("Day") acted under color of state law when they unlawfully searched and seized Plaintiff's vehicle, used excessive force, and falsely imprisoned Plaintiff following a traffic stop for a cracked windshield. Plaintiff also alleges Defendants City of Twin Falls, Twin Falls City Police Department, Twin Falls City Chief of Police Brian Pike and Does I-X, as supervisors, failed to use ordinary care and were negligent in the supervision, training and retention of Arrendondo and Day. Finally, Plaintiff brings claims for intentional and negligent infliction of emotional distress against all Defendants, and for civil assault and battery, false imprisonment, and false arrest against Arrendondo and Day.

Plaintiff's Complaint was filed through his former counsel of record, Keith Roark ("Mr. Roark") and Kevin Cassidy ("Mr. Cassidy") of "The Roark Law Firm, LLP" (collectively referred to hereinafter as "former counsel"). The Court entered a Scheduling Order on July 15, 2013 to establish various case management deadlines, including a February 3, 2014 deadline for dispositive motions. (Dkt. 18.) Plaintiff is unaware of any work his former counsel did to prosecute his case. (Dkt. 38-3, ¶ 3.) However, in December 2013, shortly before the dispositive motion deadline, Plaintiff alleges his former counsel began pressuring him to settle his case for a much lower amount than they had initially valued his claims. [1] (*Id.*, ¶¶ 4-5.) Plaintiff did not give his former counsel settlement authority in December 2013, and stated he needed time to think about how he wished to proceed. (*Id.*)

On January 16, 2014, Plaintiff's former counsel filed a Motion for Leave to Withdraw as Plaintiff's Counsel of Record ("Motion to Withdraw"). (Dkt. 20.) Plaintiff's former counsel's affidavit in support of the Motion to Withdraw stated:

> Following the completion of the investigation and reviewing of documents supplied in the course of litigation in this matter, we advised our client of the course of action we believe to be compelled by our duty as attorneys and officers of this Court. Our clients [sic] have declined to accept our advice and the course of action they now wish to pursue is not in consistent [sic] with our professional judgment in this matter and is not compelled by our retention

---

[1] The Court must accept Plaintiff's version of the facts for purpose of deciding the Motion to Enforce. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (the evidence of the non-movant is to be believed, and all justifiable inferences drawn in his favor).

**MEMORANDUM DECISION AND ORDER - 3**

agreement. We have advised our clients that we must now seek leave of Court to withdraw from this action and they will need to proceed on their own behalf or retain replacement counsel.

(Dkt. 20-1, ¶¶ 4-6.)

Defendants filed a Notice of Non-Opposition to the Motion to Withdraw, and this Court entered an Order granting Plaintiff's former counsel leave to withdraw, on January 17, 2014. Plaintiff alleges his former counsel never gave him notice that they intended to withdraw, never explained why they were withdrawing, and never advised him of the impending dispositive motion deadline. (Dkt. 38-3, ¶ 6.) Plaintiff also contends that he never gave his former counsel consent to settle his claims, but did make an appointment, at the urging of his mother, with Mr. Cassidy to discuss his case further after the Motion to Withdraw had already been granted. (*Id.*, ¶ 7.) In the meantime, Defendants filed a Motion for Summary Judgment on January 31, 2014. (Dkt. 25.)

During the week of February 3, 2014, Plaintiff met with Mr. Cassidy. (Dkt. 38-3, ¶ 8.) Mr. Cassidy again tried to pressure Plaintiff into settling his claims, and suggested Plaintiff make a settlement offer of $30,000. (*Id.*) Plaintiff contested this amount, but eventually, at the urging of Mr. Cassidy, felt he had "no choice" but to settle his claims for $30,000. (*Id.*) On February 10, 2014, Mr. Cassidy notified Plaintiff that Defendants had offered to settle for $10,000. (*Id.*, ¶ 10.) Mr. Cassidy

recommended that Plaintiff counter with a $20,000 settlement offer. (*Id.*) Plaintiff reluctantly authorized Mr. Cassidy to settle the case for $20,000. (*Id.*)

On February 14, 2014, Mr. Cassidy again contacted Plaintiff and stated Defendants had made a final settlement offer of $15,000. (*Id.*, ¶ 11.) Plaintiff responded he wanted to obtain his medical bills for Mr. Cassidy to review, and did not authorize Mr. Cassidy to settle his claims for $15,000. (*Id.*) Frustrated with the increasing pressure to settle his case, Plaintiff did not bring his medical bills to Mr. Cassidy, and instead decided to seek new counsel. (*Id.*, ¶ 12.)

On February 17, 2014, Plaintiff received a voicemail from Mr. Cassidy asking him to provide his medical bills and advising him that he could either take Defendants' final settlement offer of $15,000 or "walk away with nothing." (Dkt. 38, Ex. 1.) Mr. Cassidy thereafter contacted Plaintiff two more times to attempt to pressure him into settling for $15,000, and hung up in a rage both times when Plaintiff continued to refuse to accept $15,000. (Dkt. 38-3, ¶ 17.) On February 18, 2014, Plaintiff sent his former counsel a letter refusing the $15,000 settlement offer, and noting his intention to obtain new counsel. (Dkt. 38, Ex. 3.)

Defendants contend that, after withdrawing from the case in January 2014, Mr. Cassidy contacted Defendants' counsel and relayed a settlement demand of $30,000. (Dkt. 32-1, p. 3.) Defendants rejected this offer but, after negotiating,

eventually agreed in early February 2014 to pay Plaintiff $15,000 in exchange for dismissal of all of Plaintiff's claims. (*Id*.) Defendants here seek to enforce the $15,000 verbal settlement agreement. In support of their claim that the parties reached an agreement to settle the case for $15,000, Defendants filed an affidavit from Mr. Cassidy stating Plaintiff unequivocally informed him in February 2014 that he had express authority to accept a counter-offer of $15,000 as full settlement of Plaintiff's claims. (Dkt. 32-3, ¶¶ 7-8.) Defendants suggest Mr. Cassidy notified them a short time after the $15,000 settlement agreement was reached that Plaintiff would not comply with the settlement and was seeking new counsel. (Dkt. 32-1, p. 4.) Defendants filed the instant Motion to Enforce on March 10, 2014. (Dkt. 32.)

## STANDARD OF REVIEW

A settlement agreement "supersedes and extinguishes all pre-existing claims the parties intended to settle." *Vanderford Co., Inc. v. Knudson*, 249 P.3d 857, 863 (Idaho 2011) (quoting *Goodman v. Lothrop*, 151 P.3d 818, 821 (Idaho 2007)). A party to a lawsuit in which a settlement agreement is reached "need not initiate a new civil lawsuit to enforce the settlement agreement." *Id*. Although "the better practice" is to amend the pleadings to add a cause of action based upon the settlement agreement, a party seeking to enforce the agreement can also do so by motion in the existing lawsuit before it is dismissed. *Id.* (citing *Mihalka v.*

*Shepherd*, 181 P.3d 473, 477 (Idaho 2008)). Under Idaho law, a motion for the enforcement of a settlement agreement "is treated as a motion for summary judgment when no evidentiary hearing has been conducted."[2] *Id.* (citing *Ogden v. Griffith*, 236 P.3d 1249, 1252 n. 1 (Idaho 2010)).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Sprinkler Irrigation Co. v. John Deere Ins. Co., Inc.*, 85 P.3d 667, 671 (Idaho 2004) (citation omitted). Summary judgment is inappropriate where "reasonable people could reach different conclusions or draw conflicting inferences from the evidence" regarding a genuine issue of material fact. *Kalange v. Rencher*, 30 P.3d 970, 973 (Idaho 2001). The moving party carries the burden of proving the absence of a genuine issue of

---

2 If the Court were to instead treat Defendants' Motion to Enforce as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court could look no further than the pleadings when deciding the motion. *Goodman v. Lothrop*, 151 P.3d 818, 822 (Idaho 2007) (citing *Young v. City of Ketchum*, 44 P.3d 1157, 1159 (Idaho 2002)). If a court nevertheless considers material outside of the pleadings "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]" *Id*. Where, as here, the Court considers extra-complaint affidavits and exhibits submitted by the parties to decide a motion to enforce, the summary judgment standard of review is applicable. *Id*.

**MEMORANDUM DECISION AND ORDER - 7**

material fact. *Vanderford*, 249 P.3d at 864 (quoting *Banner Life Ins. Co. v. Mark Wallace Dixson Irrevocable Trust*, 206 P.3d 481, 487 (Idaho 2009)).

## ANALYSIS

Defendants contend they entered into a binding an oral settlement agreement with Plaintiff's former counsel in early February 2014 to settle Plaintiff's claims for $15,000. Generally, oral settlement agreements do not have to be reduced to writing to be enforceable. *McColm-Traska v. Baker*, 88 P.3d 767, 770 (Idaho 2004) (citing *Lyle v. Koubourlis*, 771 P.2d 907, 909 (Idaho 1988)). However, settlement agreements must comply with the general requirements for contracts. *Id*. Thus, for an oral settlement agreement to be enforceable, there must be manifestation of mutual intent to contract, as well as a meeting of the minds regarding the essential terms of the agreement. *Lawrence v. Hutchinson*, 204 P.3d 532, 538 (Idaho App. 2009). To be enforceable, a "contract must be complete, definite, and certain in all its material terms, or contain provisions which are capable in themselves of being reduced to certainty." *Id*. (citations omitted). The enforcement of settlement agreements is "governed by principles of local law which apply to interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989). As the settlement agreement was entered into in Idaho and the parties are all residents of Idaho, Idaho contract law applies.

Here the parties do not dispute the existence of the oral settlement agreement, but instead contest whether Plaintiff's former counsel had authority to agree to settle Plaintiff's claims for $15,000. Generally, "a settlement may be effected by an agent representing a principal to a controversy, so long as the agent has settlement authority." *Muniz v. Schrader*, 767 P.2d 1272, 1275 (Idaho App. 1989) (hereinafter "*Muniz*") (citations omitted). However, in Idaho, an agent must have actual authority to compromise and settle his principal's claim. *Id*. (citing *Cameron Sales, Inc. v. Klemish*, 463 P.2d 287 (Idaho 1970)). The doctrine of apparent authority is inapplicable where, as here, the action taken by the agent compromises the principal's claim. *Caballero v. Wikse*, 92 P.3d 1076, 1079 (Idaho 2004). Thus, Plaintiff could only be bound by Mr. Cassidy's agreement to settle Plaintiff's claims for $15,000 if Mr. Cassidy had actual authority to settle Plaintiff's case for this amount.

Actual express authority refers to that authority which the principal has explicitly granted the agent to act in the principal's name. *Muniz*, 767 P.2d at 1275 (citing *Bailey v. Ness*, 708 P.2d 900 (Idaho 1985)). As Defendants admit, the only evidence of "actual authority" in this case is Mr. Cassidy's sworn statement that he had authority to settle Plaintiff's case for $15,000. (Dkt. 42, p. 2.) Notably, the declarations of an alleged agent, standing alone, are insufficient to establish actual

authority. *Muniz*, 767 P.2d at 1275 (citing *Clark v. Gneiting*, 501 P.2d 278 (Idaho 1972)); *see also Caballero v. Wikse*, 92 P.3d 1076, 1080 (Idaho 2004)).

Actual implied authority may also "be inferred from dealings, circumstances, acts and conduct." *Muniz*, 767 P.2d at 1275 (citing *White v. Doney*, 351 P.2d 380, 382 (Idaho 1960)). However, Defendants do not point to any dealings, circumstances, acts or conduct to support the inference that Mr. Cassidy had actual authority to settle the case for $15,000, other than that Mr. Cassidy claimed he had such authority. Plaintiff, by contrast, has submitted substantial evidence to suggest Mr. Cassidy did not, in fact, have authority to settle Plaintiff's claims for $15,000. Plaintiff states in his affidavit that he never authorized Mr. Cassidy to settle his claims for $15,000, that he never entered into a settlement with Defendants for $15,000, and that he specifically advised Mr. Cassidy that he would not settle the case for $15,000 and sought new counsel when Mr. Cassidy attempted to pressure Plaintiff into settling for $15,000. Drawing all reasonable inferences in favor of Plaintiff, as he is the non-moving party, it is reasonable to conclude that even though Plaintiff authorized Mr. Cassidy to settle this case for $20,000, he did not authorize the $15,000 settlement Defendants here seek to enforce.

As Plaintiff has raised genuine issues of material fact suggesting Mr. Cassidy did not have authority to bind Plaintiff to the $15,000 settlement agreement, the

Court must deny Defendants' Motion to Enforce. This result is particularly warranted in light of Mr. Cassidy's withdrawal from this case on January 17, 2014, and given the implication in the Motion to Withdraw that such withdrawal was based on Plaintiff's refusal to settle. (Dkt. 20.) Given this, Defendants should have relied on more than Mr. Cassidy's assertion that he had full authority to settle the case for $15,000 when they entered into the settlement agreement. As Comment D to the Restatement (Third) of the Law Governing Lawyers § 27 (2000) notes:

> When a lawyer purports to enter a settlement binding on the client but lacks authority to do so, the burden of inconvenience resulting if the client repudiates the settlement is properly left with the opposing party, who should know that settlements are normally subject to approval by the client and who has no manifested contrary indication from the client. The opposing party can protect itself by obtaining clarification of the lawyer's authority. Refusing to uphold a settlement reached without the client's authority means that the case remains open, while upholding such a settlement deprives the client of the right to have the claim resolved on other terms.

Other than Mr. Cassidy's claim that he had express authority, which has been refuted by Plaintiff, there has been no showing that Mr. Cassidy had the actual authority to compromise Plaintiff's claims for $15,000. Nor does it appear that Plaintiff ever ratified the $15,000 settlement. The Court accordingly concludes that Plaintiff was not bound by his former counsel's agreement to settle the case for

$15,000, and denies Defendants' Motion to Enforce. *Cameron Sales, Inc. v. Klemish*, 463 P.2d 287, 291-292 (Idaho 1970).

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** Defendants' Motion to Enforce Settlement Agreement (Dkt. 32) is **DENIED**.

DATED: May 19, 2014

_____
Edward J. Lodge
United States District Judge